All rise for the Senate election. Please be seated. All set? Call the next case please. 3-14-0977, consolidated with 3-15-0977. People of the state of Illinois, appellee by Justin Nicolosi v. Ryan Miller, appellant by Mark Fisher. Good afternoon, Your Honors, and may it please the Court, Counsel, I'm Mark Fisher from the Appellate Defender's Office, and I'm representing the defendant in these consolidated appeals, Ryan Miller. Ryan was convicted in a jury trial of first-degree murder. Specifically, the jury found that on November 7, 2005, he caused injuries to 17-month-old Aliyah Andrews that resulted in her death. The jury also found that he knew that his conduct was likely to result in death or great bodily harm. He was sentenced to a term of natural life imprisonment. That conviction and sentence were affirmed by this Court on direct appeal. He subsequently filed a pro se post-conviction petition. Counsel was appointed to represent him and filed an amended petition. The state responded with an answer. At a second stage hearing, the judge dismissed most of the defendant's post-conviction claims, but scheduled an evidentiary hearing as to three of the claims. At the conclusion of the evidentiary hearing, the judge denied relief on two of the claims, but ordered a new sentencing hearing, finding that the life sentence had been invalidated based on constitutional grounds by the Illinois Supreme Court's decision in People v. Reuters. The defendant then filed a notice of appeal from the rejection of all his other post-conviction claims, both at the second and third stages. At the new sentencing hearing, the range was between 20 and 60 years imprisonment, and the judge imposed the max of 60. The defendant then filed a notice of appeal from that new sentencing hearing. Four issues are raised in these two consolidated appeals. The first issue the defendant maintains, that because the state filed an answer and not a motion to dismiss the amended petition, all of the claims raised in the amended petition had to proceed to an evidentiary hearing. The defendant therefore asked this court in issue one to allow the cause for a third stage hearing as to the claims dismissed at the second stage. In issue two, he argues that post-conviction counsel did not provide him with a reasonable level of assistance as to two of the post-conviction claims, one dismissed at the second stage, one of which was rejected at the evidentiary hearing. So he asked for additional proceedings as to those two claims. In issue three, he argues that the other claim that was rejected at the evidentiary hearing actually should have resulted in a new trial, because the defendant established ineffective assistance of trial counsel, and therefore asked the court for a remand for a new trial. Finally, in issue four, which involves the appeal from the new sentencing hearing, the defendant submits that the new maximum sentence was excessive, also that the judge considered improper aggravation and failed, in fact refused to consider appropriate mitigation. He therefore asked this court in issue four to either reduce the sentence to a lesser term of years, or to remand for resentencing. Now, in argument today, I'd like to talk about part of issue two, reasonable level of assistance with respect to the issue that went to the third stage. I'd also like to discuss the sentencing issue. If your honors have questions about issues one and or three, I'd be happy to address those as well. Prior to trial, this defendant was found unfit. After a couple of months, the judge found that he had regained fitness, so the case then proceeded to trial. Defendant testified at the evidentiary hearing that during the trial, he was prescribed a medication called Seroquel. In fact, that's consistent with the original pre-sentence report. He testified that as a result of taking this drug, he was not in his right mind. He described it as being in a perpetual sleep or dream state, said he couldn't concentrate or focus or assist his attorneys in defending him. Now, at the evidentiary hearing, the judge also heard testimony from the original trial judge and the two attorneys who represented Miller at trial. Now, several years passed between the time of the trial and the post-conviction hearing. Nonetheless, these witnesses testified that their recollection was that they had not seen anything indicating to them that Miller was unfit at trial. And that was really all the evidence that was presented to the judge as to this particular issue. The only other evidence that was presented wasn't really evidence, it was really an anecdote, if you will, expressed by the prosecutor during the cross-examination of the defendant where he said that he himself had taken this drug as a sleep aid and apparently it worked. So in effect, as to this particular issue, the judge was left with a credibility determination and he came down on the side of the original trial judge and the defense attorneys. It could easily be found under the circumstances that the defendant's self-serving and would submit to this court that counsel, a post-conviction counsel, could and should have presented additional information to the court that would have bolstered the defendant's assertion and would have given the judge much more to go on than just simply a credibility determination. And I'm talking about two different things here. First of all, there's quite a bit of literature about this particular drug called Seroquel, and it identifies side effects that some individuals experience as a result of taking the drug. The literature is consistent that the most common side effect is soundness, unusual drowsiness, and confusion, and that the drug has the potential to impair judgment in thinking and should not be taken while performing activities requiring mental alertness. It appears that this is consistent with what the defendant said he experienced at the time of trial, but none of this information was presented to the judge. The only evidence the judge was given with respect to this drug, again, came from the prosecutor's own personal experience. Now, I found this information on the Internet. I would submit the post-condition counsel could have easily found it, presented it to the judge, perhaps called a doctor, even a pharmacist to discuss these serious side effects of this drug. Had he done so, once again, it would have more fully presented this claim to the judge and would have corroborated the defendant's testimony. In addition, the defendant submits, the counsel should have cited to the trial record, because the record shows that during the evidentiary phase of the trial, the jury sent the judge a note asking whether the defendant was taking something to calm him down. Now, in discussing this note outside the presence of the jury, the defense counsel said, I know exactly what the jurors saw. Now, unfortunately, there's no elaboration, there's no explanation, there is no follow-up in the trial record. But I think we can infer from these comments both by the jury and the defense counsel that they saw the defendant acting unusually. Now, we love to speculate. Maybe he was staring off into space, maybe he was nodding off. We just don't know. But it certainly seems to be consistent with him saying that he felt like he was in this perpetual sleep or dream state and couldn't concentrate. Now, counsel did ask the witnesses whether they recalled a note from the jury asking about the defendant's mental state. Unfortunately, that's kind of vague. And maybe because of the passage of time, many of the witnesses recalled that note. And it's a misunderstanding that what counsel should have done, he should have followed that up by reading verbatim the note from the jury and counsel's response. Number one, had he done that, maybe it would have jogged the witness's memories. Whether or not it would have done so, once again, it would have been consistent with the defendant's testimony. It would have given the judge more to go on than simply credibility.  Now, counsel, post-conviction counsel, has an obligation to fully and present the defendant's claims in writing. But where the case goes to an evidentiary hearing, he also has the obligation to present corroborating evidence where it exists. Sometimes all you have is the testimony of the witness. But where the record and the literature shows he could have presented more, the defendant submits he did not provide a reasonable level of assistance because he did not present more. But at the end of the day, on the ineffective assistance claim, would we still go back to the strickland standard? Well, it's a reasonable level of assistance, so it's a little bit different because it's post-conviction counsel as opposed to trial counsel. And one of the distinctions, though, is that if the court were to find that counsel did not provide a reasonable level of assistance, harmless error is not part of the analysis, whereas with ineffective assistance of trial or plea counsel, that the outcome might have been different would be an element of the ineffective assistance of trial counsel analysis. Certainly we can't know whether the judge's decision might have been different had counsel presented this information. What counsel is obligated to do is to, again, fully and fairly present the claim to the extent that the defendant would do so if he had the wherewithal, the ability to do so. And that's the question here. He presented the claim, but did he do it to the extent possible to give the defendant the best chance and to give the judge the most information, the best information on which to make a decision as to this particular claim? And given his comments in the trial record that were not brought out, given the literature that I found that was not brought out, I don't believe that he did so. Now, there was also a part of the reasonable level of assistance dealing with counsel's representation as to an issue that was rejected at second stage, and I'd stand on the bruises to that unless Your Honors have specific questions. I'd also like to talk a bit about sentencing in this case. There was absolutely no question that this was a tragic occurrence. This was a senseless death. This was a very young child. The defendant's statements to the police and the testimony of the mother of the child was that the defendant and the mother lived together. On a day in question, she went to work, leaving him to babysit. He told police that she misbehaved. He punished her. He clearly overreacted, lost his temper, inflicted injuries. All the injuries were life-threatening except one to the liver, which testimony was it caused her death. No question it's tragic. It's senseless. It should not have happened. Having said that, the judge had sentenced him. Of course, let's consider the circumstances surrounding the offense, and the evidence here shows that there were contributing factors. The defendant's young age. He was 22 years old. His cocaine dependence, and he said that he used cocaine that day, and there was a task report showing the connection between his cocaine dependence and the offense. In addition, the prosecutor argued for his sentence in the hearing, and the judge agreed that this young defendant was unequipped to be in a parenting situation. Having said all that, when the child was brought to the hospital, the doctors found no old injuries, no indications the child had ever previously been abused, and the mother did testify that she had left the defendant with the child on prior occasions. And so although he was unequipped to be in a parenting situation, this, unfortunately and tragically, was a one-time incident. I'm not trying to undermine or undercut it, but it was a one-time incident, a loss of temper fueled by drugs and his young age, as opposed to a history of violent conduct. He did have a couple of prior convictions, but the judge himself said he had virtually no record. In addition, the judge found that this young man had an impoverished upbringing, both in terms of finances and in terms of parental guidance. His own mother turned him on to drugs at a young age. He was physically abused as a child. In addition, the record shows that Ryan Miller today, and by today I mean at the time of the new sentencing hearing, is very different from the Ryan Miller who committed this offense back in 2005. He's been in the Department of Corrections for several years, I think close to ten years at this point. The record at the new sentencing hearing showed that he had furthered his education, he joined the prison choir, had no record of misconduct in the DOC. He rid himself of his cocaine dependence. It's a little harder to get inside the DOC, isn't it? I'm sorry, Harry? Cocaine's a little harder. It is harder to get. At least harder to obtain inside the DOC. It is harder to get, and unfortunately we do see cases where people are prosecuted or bring contraband into the institution or are found with contraband in the institution. But the point is he seems to have become a model citizen in the DOC. Now, of course we expect and hope that from everybody in the DOC, but we know it doesn't always happen. These points reflect on his prospects for rehabilitation. I also wrote a lengthy note to the judge expressing how bad he felt about the child's death. There was some quibbling in the trial court about whether he was truthfully remorseful. In the original pre-sentence report, there was even a psychological report saying he was guilt ridden back then. So I don't think this is something new all of a sudden. But the fact is, at sentencing, Judge Broad reviewed all of these claims. And I should also mention that based on his prison record, the trial prosecutor said this man is on the path to rehabilitation. And Judge Broad did not deny that. He didn't reject it. He reviewed all of this. And he specifically said that generally when these factors come forth and a defendant is being sentenced for a criminal offense, these factors will be very helpful to that individual in terms of the sentence that he's going to receive. But the judge said not in this case because his conduct just could not be forgiven. Thank you. First of all, I don't think forgiveness is part of the sentencing equation. I don't think it's something the judge should consider. I mean, forgiveness is part of the sentencing process, isn't it? Well, you consider the offense. You consider the circumstances surrounding the offense. And we've discussed the circumstances surrounding the offense. There are some extenuating circumstances. So the question becomes when you said that, even if you could say that, I don't think it's proper, but if someone did admit something a little bit different, what did he mean? You can't forgive a murder or a murder of a child? Let me ask you this. You know, the defendant's version of how these injuries were inflicted, you know, I could push the child back onto the sofa. Do you think the judge had to accept that he was telling the truth about how he was pushing the child onto a sofa and bisected the lizard? Well, certainly as to that particular injury, the medical testimony was it would have had to have been a blow. So I think there was something in addition that the defendant did not say or maybe did not recall at that particular time, whether the drug use, what have you, whatever the case may be. That's true. Interestingly, very importantly, I think, the prosecution did not charge the defendant here with intent murder. They didn't charge the defendant with felony murder, either. It was knowledge murder. Knowing his conduct was likely to result in death or grave bodily harm. Now, it certainly has serious in terms of sentencing range, but less serious in terms of the mental state. I think you can get everything here as the judge is obligated to do, and this is not a max sentence case. The judge can say, well, there's a rehabilitated potential, but I'm going to give it less weight. But here he's going to say, I'm just not going to consider it. He has to consider it. The Constitution requires him to consider it. Well, he didn't say he didn't consider it. He said he didn't give it any weight, basically. He went through those factors. He said, normally it would be helpful, but this can't be forgiven, so you get the max. And I'm not saying he should have gotten the minimum. Well, let me ask you, because these things get metaphysical, and I think a lot of judges might have sentenced him less, but so it goes back to resentencing, and these sentences, the 50 years. Are we back here again? I mean, what's the absolute max? The max is 60. Well, I mean, the max is 60. It's interesting because the judge said this is the essence of that sentence, and I think that's true. So in this case, what would be the absolute max within that range? That's the sentence without any of the argument that it was reduced to a strike. I don't think I could put a number on it. If it went back and if he was given 50, would I make the same argument? I mean, part of the argument is there should be, of course, an improper consideration. Now, if the judge imposes 50 and doesn't consider anything improper or fair to consider something you should have considered, would I still make an argument? That's hard to predict. I don't know that I can put a particular sense. To me, it looks like maybe a mid-range, and I'm not saying it should have been 20 or 25. And I don't think that that's about the best I can say. I understand, and so I guess my point is that you can't do it. How can we do it? Well, as I said, give your honors the alternative. Certainly under 615b, four-year honors have the power to reduce, and I realize that's done rarely. I think it would be appropriate in this case given all of the mitigating factors. But alternatively, your honors could remand for resentencing, saying it appears that the judge here failed to consider applicable mitigation, and if your honors would do that, your honors wouldn't have to say, and by the way, we think the max should have been 50. Your honors could certainly say that but wouldn't be obligated to say that if you were remanding. All I can say is looking at the circumstances surrounding the offense, the individual's background and circumstances in the upbringing, and his prospects for rehabilitation based on the person he is today, all of these things that the judge has to consider in sentencing, there's a lot of mitigation. It's tragic. There's no way of getting around it, and I'm not saying otherwise. But given all of this, I submit that, in effect, a life sentence simply is not appropriate here. In addition, I think there's certainly enough on the record to say that this judge refused to consider mitigation inappropriately and, therefore, a reduced sentence would be justified. A remand for resentencing would also be justified. Thank you. Mr. Nicolosi. Good afternoon, your honors. May it please the court, counsel. I'd like to start with Issue 1. I know Mr. Fisher didn't discuss that in light of this court's recent opinion in People v. Jason Thompson. And the arguments he made in his brief on appeal. The people would, again, we're acknowledging that case. We understand that's a published opinion. But I still believe that the Supreme Court, in Edwards and in Tate, two cases that I cite in my brief, don't limit the finding that the child judge makes only to when the people file a motion to dismiss. And that the judge is also required to make a finding in all cases on the second stage. In Edwards and Tate, I think they make it pretty clear. They say at the second stage, the circuit court must determine whether the petition and the accompanying documentation make a substantial showing of a constitutional violation. Now, those cases, Edwards and Tate, they don't say that this only, the standard of a substantial showing only applies when a motion to dismiss is filed as opposed to an answer. Do we look at the label or the plea dealings? I think we should look at the substance, your honor. And in this case, as I argued in my brief, there's certainly an answer to a basically concession to the first issue, whether or not there should be a new sentencing hearing. The prosecutor said, we agree that this should go on to a third stage hearing. But in the rest of the body of the answer that the prosecution filed, they argue why the rest of the defendant's issues are meritless. And as I argued in the brief, that is clearly the substance of a motion to dismiss. I don't care if the document says answer and doesn't have the words motion to dismiss in there. What else would the prosecutor be arguing but to dismiss these other claims? That's why I think the document is kind of a hybrid, and the judge had the discretion to dismiss those claims because that's what the prosecution was arguing for. And piggybacking on Edwards and Tate, the Supreme Court says that there is a finding that needs to be made in these circumstances. And the people would submit that the finding the judge made in this case was proper on those particular claims. Okay, moving on to issue two, whether or not a post-conviction counsel provided reasonable assistance. The people submit that counsel's assistance was not unreasonable. Regarding this fitness issue, there are the two sub-issues. The evidence regarding this drug that the defendant was supposedly taking, and whether or not counsel should have presented some evidence, some citation to the record regarding the note that the jury gave to the judge about wondering whether this defendant was on some sort of medication or whether it was okay. And the people would submit that there is nothing in the record that would encourage counsel to do those things that the defendant requests because there was nothing to refute anything regarding the defendant's fitness. Let me ask you this. I was talking to Mr. Fisher briefly about this, and that is in a post-conviction scenario, is there a prejudice factor that can affect the assistance claim? It's not the specific Strickland standard, of course, and you don't break it down on that, but I think there certainly should be a prejudice factor, of course. Well, and the reason it's not the Strickland standard is because the defendant has fewer constitutional protections on a post-conviction than on a regular trial. Of course, there is no constitutional appropriation. But it seems counterintuitive to me that there would be an easier way to get a new trial and, in effect, assistance in a hearing in a post-conviction when you've got fewer constitutional protections than before. Of course. Your Honor, that shouldn't be, and I think if you look at the evidence in this case, there's nothing based on the evidence that was presented at this evidentiary hearing to indicate that there was any question of the defendant's fitness throughout the pendency of his whole trial. I do agree with that statement. There's nothing in this record of the hearing to show that he wasn't fit. But there is something in the record, and that was the handwritten note from the purse. Sure. So it doesn't really matter whether he was on psychotropic medication or taking a sleeping pill. The jurors were the independent witnesses that say, Hey, Judge, we want to know, is he on something? The cross-examination by defense counsel during the third stage hearing was of Judge Stengel, Mr. Durbin, and Mr. Hines, and they all said, We don't remember a note. So there is nothing in the record to support this theory that the jurors saw something. In the record of the hearing, there is something in the record. Do you think if the trial judge had known the jurors had taken the time to write a note to the court, it would have made a difference? I don't think it would have made a difference because I don't see how letting the attorneys know, giving them, you know, refreshing the recollection that there was a note, wouldn't have changed their testimony because I think their testimony was pretty clear that they didn't see anything. They conversed with him. Well, Hines testified he talked with him more than Durbin, but he was able to address the issues. He was able to communicate with his attorneys. He asked questions, and he appeared to understand the answers to those questions. Hines testified that the defendant would write notes and give them to Hines to assist, and the notes were coherent and they were made with a purpose. They were helpful. And Hines also testified that there was no evidence that any medication was affecting him. And if you look at all of that, I don't... If there is no evidence that the medication was affecting him, then what did the jurors see? Well, the jurors... They saw somebody who was... Called. Well, according to the judge, the judge was the only one, well, okay, none of them remembered it at the evidence hearing. None of them remembered the note, but if you go back in the record, when you look at what... The transcript of what happened. Yes. Judge Stengel, he observed that the defendant was calm, and he suggested there could have been any number of reasons why the defendant was calm. And I think... So the judge obviously observed something going on with the defendant, but I think the fact that a man is calm doesn't trigger any indication that he's on some sort of medication, that there's anything wrong with him. There are a thousand reasons why somebody could be calm during their own criminal trial. And I think the fact that... We have to give the testimonies of Heintz and Durbin a lot of deference here, because they were with us... The judge's comment during the... When the note came out, and they were discussing it amongst the prosecutor and the defense attorney, the judge says, he could be calm because he's not listening to the evidence. I don't know. He's not capable or listening to the evidence that... Just because he's not listening doesn't mean he's not capable of listening. I watch a lot of Dateline, and they always have... He's trying not to fix our decisions. I understand, but they have cameras in the courtroom. These defendants look like they are not involved in these proceedings, but it certainly doesn't indicate that they're unfit at all. Perhaps maybe we look like we're not involved at times in the proceedings. I'm sure I might as well. I don't know. But I think we need to defer to the testimony by his attorneys, who were with him the whole time. And, again, Heintz testified clearly that they had a lot of interaction, and there was no indication. I understand your point, but if they don't remember the note, which, you know, that's kind of an unusual thing that interrupts a trial. If they don't remember the note, then is it possible they're not correctly recalling defendant's demeanor? And we are not talking about sending this back for a new trial. It's just a new third stage, so... Sure, and I think post-commissioned counsel... Do you think the cross-examination, that third and the third stage, was a reasonable level of insistence? I think it was a reasonable level. Well, I would, as a, you know... Maybe counsel should have presented the note, but as Justice Schmidt, I think, was alluding to with his earlier line of questioning, I don't think there's any prejudice here. I just can't imagine that any presentation of this note would have triggered something in Heintz and Durbin's and even Stengel's recollection in this defendant. They were clearly talking about this defendant. It would have caused the judge to doubt their testimony. And we'll disagree. I understand. And I'll let you move on. I understand. I think my final stance on this is going to be that just... All three of these men testified as to what they observed with this defendant. And I don't believe anything that post-conviction counsel could have done would have changed what they physically observed in the courtroom in their interactions with this defendant. And for that reason, I believe that there's no prejudice that counsel provided reasonable assistance in representing the defendant. So with that, I'll move to the sentencing issue and the people who submit that the sentence here was proper and that the trial judge did not abuse his discretion. Again, it's pretty well settled at this point that the nature of the offense, the seriousness of the offense, is the most important consideration in sentencing. And as counsel acknowledged, this was a pretty brutal attack on a 17-month-old child. She died with a transected liver. He was convicted of? Murder. Well, doesn't every murder result in death? I mean, they're all pretty serious. They're all pretty serious. And they're all serious to the same extent. Somebody died. Yes. Yes, Your Honor. But as the trial judge or the sentencing judge commented here, this went beyond, that was a direct quote, so beyond a typical death of a child due to the many wounds all over this child's body, the face, the abs, ears, forehead. And there's hemorrhaging under the scalp. And I agree, this is just as bad as any other murder  But as you were discussing, Judge Schmidt, with Mr. Fisher, about his defendant's behavior regarding the police and what he did in the aftermath of this incident that I think really weighs towards the sentence that supports the sentence that the judge here gave. The defendant told two different stories to police. The first story was that the victim just all of a sudden started coughing and vomiting and acting funny. Those are his phrases to the police. And then when presented, and he stated that he responded immediately once he saw those, he observed those symptoms that he called police, he got help, and then police came. But, of course, in light of when he was presented with information that this child's temperature was below 92 degrees and this child must have been dead for a long time, the defendant changed his story. And then he said he saw that the child had broken the antenna of the TV, and then he spanked her, and he shook her, and then he threw her, quote, countless times, end quote, and then kept her head down, pushing it into the couch so she would go to sleep, or what he thought would put her to sleep. And then, of course, she ended up dying. I think the fact that he attempted to hide his own behavior just shows what kind of person this gentleman is, and the fact that he didn't try to help this child goes a long way to supporting a pretty severe sentence in this case. And people would also submit, as I argued in my brief, the lack of remorse that the defendant showed at the sentencing hearing doesn't help his cause. He stated, quote, a murderer hates and intends, and that he wasn't that type of person. Well, clearly he was. I mean, the trial judge even commented, or the sentencing judge even commented, how this crime exhibits obvious hatred because it's such a brutal, brutal attack. And the defendant also stated, quote, a murderer doesn't call 911 or attempt to save a life, end quote. If he's attempting to show remorse and contrition and these types of things, he's clearly trying to minimize his own fault here, or trying to mitigate what he did. And I just don't believe, and the trial judge certainly didn't believe that this is a true expression of remorse that's worthy of some consideration. Thank you. As counsel is discussing evidence of mitigation, I think it's clear that the trial judge, the sentencing judge, did discuss some mitigation. He considered that he got a bad start in life, talked about his upbringing and things like that. He talked about how he wasn't in a position to be a parent. He wasn't ready for that type of responsibility. But clearly he had been a babysitter for this child before, so clearly he has some experience. So I think that the trial judge did consider evidence of mitigation here. And for the final thing, the counsel was requesting first that this court would lower the sentence. If they wouldn't do that, then he requested that they would send it back for another sentencing hearing. But the trial judge already considered this matter twice.  The judge considered it and, again, stated that this attack was so heinous that it outweighs any other consideration. I don't believe remanding for resentencing, to have the judge consider it again, makes any sense, because I think it's pretty clear that the judge believes that this sentence was worthy of the sentence that was awarded. And I don't believe that it was arbitrary, unreasonable in any way, shape, or form. And I believe that the record and the evidence supports the sentence that was handed down. That's all I have. If there are any other questions, other people would submit that this court affirms the trial judges and the sentencing judges' rulings in this case. If there are any other questions, I'd be happy to answer them. Thank you. Mr. Fisher, something to add? Yes, thank you, Your Honor. First of all, with respect to the second issue, the reasonable level of assistance, and in particular Judge Stengel's comment that, well, the defendant was calm, my reading of this note from the jury and of the response from the defense counsel is there was something more going on there. Well, I mean, we can surmise all day about what that note meant. I mean, sometimes you're sitting in a murder trial and you're describing horrific injuries to a child, and the average citizen might expect somebody sitting in there to be, you know, sobbing or wild or reacting somehow. And that note, you know, I mean, it would take us, there would have to be a lot of conjecture in there to mean that that note somehow was a signal that the defendant wasn't fit. Well, I'm certainly not arguing that just by itself that that would support an argument of unfitness. What I'm saying is, had that been presented to the judge in conjunction with or in support of the defendant's testimony about what he recalls his mental state was at that time, and had counsel also presented the literature about the side effects of this medication. You put it all together and you have a much thinner picture. I'm not saying, again, that that would obligate the judge to change his mind. We don't know if it would have. But as it was, he was simply left with credibility. The defendant says this, these witnesses say that. And again, they said that after about ten years. Of course, the defendant's also saying it after ten years. But it's a question here not of, I'm not asking this court to find that the defendant was unfit. I'm not asking for a new trial because he was unfit. What I'm asking is a remand for additional proceedings as to this issue because I don't think counsel fully presented this issue and therefore did not provide a reasonable level of assistance. And as a result, there should be further proceedings with respect to this issue because there's enough here showing that counsel could have done more and was obligated to do more as appointed post-conviction counsel in this case. All right. With respect to sentencing, counsel correctly notes that this defendant told two different stories to the police. The first said, run. Said, I don't know. And she started vomiting and then changed his story. We see that happen. It's a young, scared drug-addicted kid. It's not a defense. But he ultimately came clean and changed his story about what happened, about what he did, at least to a great degree, ultimately taking responsibility. Counsel says, well, he didn't try to help the child. He said he wanted her to go to sleep and be quiet and let him concentrate on what he was trying to do. After a while, he looked over, and she's not moving. She's not saying anything. At that point, he did try to get help. He called the mother at work. He went to a neighbor, saying, could you come over and, you know, look at the child? And then eventually it was that neighbor who called 911. That was because the defendant got in for help. So he did try to do something. Should he have done it sooner? Sure. Should he not have looked at any injuries to begin with? Of course. But he's not the cold-hearted individual that perhaps the state tries to make him out to be. The final point I think I wanted to say is really to clear up potential confusion or a potential misstatement that I think I might have made in my opening brief, and that was in the conclusion page where I summarized the different forms of relief going issue by issue. And at the end, with respect to issue four, the sentencing issue, I asked this court to grant sentencing relief as a final alternative. Now, preparing for argument, it occurred to me that maybe that final alternative language was a bit misleading. And, of course, in the end, I'll leave it up to this court. But certainly if this court remains for a new trial as to issue three, I don't think your honors would have to reach the sentencing issue. It really becomes the news. If your honors do not grant relief on issues one, two, or three, then clearly you would have to reach the sentencing issue. But if your honors remain for additional proceedings because of issue one and or issue two, of course those additional post-conviction proceedings could possibly result in a new trial at that point making the sentencing moot. But if they didn't, I don't think the defendant would then be able to come back and re-argue the sentencing issue. And, therefore, I suggest to the court that if your honors were to remain for additional post-conviction proceedings because of issues one and or two, not grant a new trial, just remain for additional post-conviction proceedings, I think you would still have to reach the sentencing issue or possibly I suppose your honors could perhaps unconsolidate, deconsolidate, I'm not sure if there's a term there, the two cases and maybe hold the sentencing issue in abeyance. I don't know. As I said, I'll leave it up to the court's good judgment. I'm just concerned that if your honors remain for additional post-conviction proceedings and say, well, we don't really need to reach sentencing, but don't retain jurisdictions to that issue, that if he gets a new trial, that's fine. If he doesn't get a new trial, he could appeal from that, but probably wouldn't be able to re-argue the sentencing issue. So I just wanted to bring that to the court's attention. And I think that concludes my comments unless your honors have any questions. All right. Well, thank you, Mr. Fisher. Thank you, your honors. And thank you, Mr. Nick Losey. We'll take this matter under advisement. A written disposition will be issued. And right now we'll be in a brief recess for a panel change for the next case.